OPINION
{¶ 1} The defendant-appellant, Devon Pickering ("Pickering"), appeals the Allen County Common Pleas Court's judgment of conviction and sentencing.
 {¶ 2} On December 15, 2005, the Allen County Grand Jury issued two indictments against Pickering. The first indictment was issued in Allen County Common Pleas Court case number CR-2005-0491. The indictment charged Pickering with one count of attempt to carry a concealed weapon, a violation of R.C. 2923.02
and 2923.12(A) and (D), a felony of the fifth degree. The alleged criminal activity occurred on October 3, 2005. The second indictment was issued in Allen County Common Pleas Court case number CR-2005-0570, which is currently before us. The indictment charged Pickering with three counts of rape, violations of R.C.2907.02(A)(1)(b), felonies of the first degree, with the specification that the victim was under the age of thirteen. The indictment alleged that three offenses occurred; the first between March 1, 2005 and March 30, 2005, the second on August 1, 2005, and the third on October 19, 2005.
 {¶ 3} On January 4, 2006, Pickering filed a motion to suppress his confession. The trial court held a hearing on January 18, 2006 and filed its judgment entry overruling the motion on February 1, 2006. On March 7, 2006, the trial court held a joint change of plea hearing. Pickering completed a negotiated plea form, indicating his plea of no contest to two counts of rape and one count of attempt to carry a concealed weapon. In return, the State of Ohio ("State") dismissed the third rape charge. On the same date, the trial court filed its judgment entry of conviction.
 {¶ 4} On May 10, 2006, the trial court held a joint sentencing hearing. Guided by the Supreme Court's holding inState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, the court sentenced Pickering to two five-year prison terms to be served concurrently for the rape counts. The court also sentenced Pickering to serve a six-month prison term consecutive to the two, concurrent five-year prison terms, for an aggregate sentence of five years and six months in prison. On May 11, 2006, the trial court filed its sentencing judgment entry. Pickering appealed the trial court's judgment, and we consolidated the cases for oral argument only. Pickering asserts the following assignments of error:
The sentence imposed was imposed pursuant to ajudicially-created version of Ohio sentencing laws, that appliedretroactively to Mr. Pickering, violated his right to freedomfrom ex post facto laws.
 The Trial Court erred in not suppressing the results of theinterrogation of Mr. Pickering by an interrogator who disregardedthe rule in Miranda.
 {¶ 5} For ease of analysis, we elect to address the assignments of error out of order. Pickering contends the trial court erred in failing to suppress his confession. Pickering contends two elements must be met before an oral Miranda waiver is effective. First, Pickering argues the waiver must be voluntary. Second, he argues the waiver must be knowing and intelligent. Pickering contends the trial court relied solely on the voluntariness of the waiver but failed to address the knowing and intelligent aspect. In response, the State contends the facts support a finding that Pickering knowingly, intelligently, and voluntarily waived his Miranda rights.
 {¶ 6} The review of a suppression motion involves both questions of law and questions of fact. State v. Jones, 3rd
Dist. No. 9-02-39, 2003-Ohio-1576, at ¶ 8 (citing State v.Norman, 136 Ohio App.3d 46, 51, 1999-Ohio-961, 735 N.E.2d 953). The trial court "is in the best position to evaluate questions of fact, witness credibility, and the weight of the evidence." Id. (citing State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972 (citing State v. Fanning (1982), 1 Ohio St.3d 19,20, 437 N.E.2d 583); State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus (citing Fanning,
at 20)). We must accept the trial court's findings of fact if supported "by competent, credible evidence." Id. (citingNorman, at 51). However, we must review the application of the facts to the law de novo; independently and without deference to the trial court's determination. Id. (citing State v. Anderson
(1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034).
 {¶ 7} The issue before us concerns an alleged Miranda
violation by Officer Deanna Lauck ("Lauck") of the Lima Police Department. At a pre-trial hearing held on January 18, 2006, the parties stipulated to the admission of State's Exhibit A, a DVD showing the interrogation. (Hearing Tr., Jun. 26, 2006, at 1-3). The trial court apparently watched the DVD off the record and filed a written decision on February 1, 2006. In its judgment entry, the court made the following findings: Lauck interviewed Pickering on November 1, 2005 at 10:40 a.m.; Lauck initially obtained general, personal information from Pickering; Lauck then left the interview room for several minutes. (J. Entry, Feb. 1, 2006, 1-2). When Lauck returned, she read Pickering his Miranda
rights while he had a printed copy of the rights in front of him; "she inquired whether he had any questions and she was satisfied that he understood same"; Lauck then read the waiver to Pickering as he read along with her; Lauck indicated "that this interview was relative to an incident involving [the victim, D.]"; and Lauck then presented the waiver form. (Id. at 2). Pickering did not sign the waiver, so Lauck indicated that D.'s mother had made a report, and she advised Pickering, "`We can't talk about this until you sign the form,' and then indicated to [Pickering], "You don't have to sign it.'". (Id.).
At this point, the question was asked of Officer Lauck toDefendant whether he wanted to talk about the incident. It shouldbe noted specifically that Officer Lauck told Defendant he didn'thave to talk to her. Defendant then specifically said, "I don'twant to sign the form (Waiver), but I'll talk to you." Defendantand Officer Lauck then proceeded with a conversation andquestions were asked of Defendant and answers were provided byDefendant.
(Id.).
 {¶ 8} We have reviewed State's Exhibit A, and we find competent and credible evidence to support the trial court's findings. At the beginning of the interview, Lauck and Pickering engaged in a general conversation about Pickering's background, which lasted approximately ten minutes. Lauck left the room for a brief period of time. When she returned, she read Pickering hisMiranda rights. She asked if he knew what an attorney was, and he indicated he did. She then asked if Pickering understood his rights. Pickering stared at the form, but did not offer a verbal response. Lauck asked Pickering, "No questions?" Receiving no response, Lauck summarized the Miranda rights, then asked if it was "OK" and if he understood, to which Pickering replied, "uh-huh". Lauck read the Miranda waiver to Pickering, then stated she would like to talk with him about the incident with D. Pickering asked why he was being questioned, and Lauck answered his question. Pickering then indicated he had talked with the victim's mom about the incident. Lauck stated she wanted to talk with Pickering about the incident, but he would need to sign the waiver in order to talk with her. However, Lauck specifically told him he was not required to sign. At approximately 10:59 a.m., Pickering indicated that he did not want to sign the waiver, but he said he would talk to Lauck. During most of this time, Pickering appeared to be looking at the form. Having found competent and credible evidence in the record to support the trial court's findings, we must determine whether the facts meet the applicable legal standard.
 {¶ 9} The inquiry as to whether a waiver is made voluntarily,knowingly and intelligently is two-fold. "First, therelinquishment of the right must have been voluntary in the sensethat it was the product of a free and deliberate choice ratherthan intimidation, coercion, or deception. Second, the waivermust have been made with a full awareness both of the nature ofthe right being abandoned and the consequences of the decision toabandon it. Only if the `totality of the circumstancessurrounding the interrogation' reveal both an uncoerced choiceand the requisite level of comprehension may a court properlyconclude that the Miranda rights have been waived."
 State v. Davie (Dec. 27, 1995), 11th Dist. No. 92-T-4693, unreported (quoting Moran v. Burbine (1986) 475 U.S. 412, 421,106 S.Ct. 1135, 89 L.Ed.2d 410). In evaluating the totality of the circumstances, the court should consider "`the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" State v. Brinkley, 105 Ohio St.3d 231,2005-Ohio-1507, 824 N.E.2d 959, at ¶ 58 (quoting State v.Edwards (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of the syllabus) and (citing State v. Green, 90 Ohio St.3d 352,366, 2000-Ohio-182, 738 N.E.2d 1208; State v. Eley,77 Ohio St.3d 174, 178, 1996-Ohio-323, 672 N.E.2d 640). In this case, Pickering does not contest the voluntariness of the waiver. Therefore, the only question before us is whether Pickering knowingly and intelligently waived his Miranda rights. Based on the totality of the circumstances, we agree with the trial court that Pickering did knowingly and intelligently waive hisMiranda protections.
 {¶ 10} Lauck summarized the Miranda rights after reading them to Pickering, and an officer is entitled to do so as long as "`the warnings reasonably "conve[y] to [a suspect] his rights as required by Miranda."'" State v. Foust, 105 Ohio St.3d 137,2004-Ohio-7006, 823 N.E.2d 836, at ¶ 68 (quoting Duckworth v.Eagan (1989), 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166
(quoting California v. Prysock (1981), 453 U.S. 355, 359,101 S.Ct. 2806, 69 L.Ed.2d 696)). Before Lauck summarized theMiranda rights, Pickering had indicated he knew what an attorney was, and after the summary he indicated he understood his rights.
 {¶ 11} During the interrogation, Pickering appeared mentally alert. He was 20 years old and in the twelfth grade at Lima Senior High School. He indicated he was in the progressive academy and taking English 2, 3, and 4, proficiency math, and a business class. He indicated that he could read and write. Pickering had a prior criminal record, and he initially asked Lauck if he was being questioned in regard to probation and several warrants. Given the opportunity to ask questions about his rights and the waiver, Pickering only inquired as to why he was being questioned, and voluntarily discussed some aspects of the case. As stressed by the trial court, Lauck specifically told Pickering he could sign the waiver, but he did not have to. Furthermore, Pickering and Lauck reviewed all of the Miranda
issues within approximately five minutes. Based on the totality of the circumstances, Pickering's waiver was knowing and intelligent. See generally State v. Gapen, 104 Ohio St.3d 358,2004-Ohio-6548, 819 N.E.2d 1047, at ¶ 53. The second assignment of error is overruled.
 {¶ 12} In the first assignment of error, Pickering argues the new sentence violates his due process rights because the effect of Foster is to create an ex post facto law. Pickering contends that Foster applies retroactively and increases the penalty for offenses committed prior to the court's decision. Under Bouie v.Columbia (1964), 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894, Pickering contends the test of whether a judicial act creates an ex post facto law is "whether the late action of the judiciary was unforeseeable at the time of the commission of the offense." Pickering argues that Foster did not create a new sentencing procedure, but merely erased a presumption that was beneficial to the defendant, which was an unanticipated remedy. Pickering essentially seeks the benefit of Foster's substantive holding, but he wishes to avoid the remedial holding.
 {¶ 13} For the reasons articulated in State v. McGhee,
3rd Dist. No. 17-06-05, 2006-Ohio-5162, we find Pickering's argument without merit. We note, as to this case, that each offense occurred subsequent to the United States Supreme Court's holding in United States v. Booker (2005), 543 U.S. 220,125 S.Ct. 738, 160 L.Ed.2d 621, which supports our conclusion inMcGhee that the remedy announced in Foster does not violate due process. Likewise, the sentencing range for fifth and first degree felonies has remained unchanged, so Pickering had notice of the potential sentences for each offense. The first assignment of error is overruled.
 {¶ 14} The judgment of the Allen County Common Pleas Court is affirmed.
Judgment affirmed.
 Shaw and Cupp, JJ., concur.